SCOTTIE INDUSTRIES, INC. *vs.* JOHN F. DONOHOE &
another, administrators.

Middlesex.   November 15, 1973. — December 6, 1973.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Executor and Administrator,* Individual or representative capacity,
Action against estate.  *Practice, Civil,* Parties.  *Public Utilities.*
*Jurisdiction,* Overcharge for electricity.

In an action wherein the writ commanded attachment of "the goods and
    estate of . . . [two named persons] Administrators . . . of the Estate
    of" a certain decedent, it was error to allow a motion to dismiss
    asserting that the writ was directed against such persons individually
    where the writ and declaration read together indicated that the claim
    and the action were against the estate of the decedent rather than
    against the adminstrators as individuals. [586-587]
In an action of contract alleging unlawful overcharges for electricity
    furnished by the defendant's testator to the plaintiff, a tenant of the
    testator, a determination that the Superior Court lacked jurisdiction
    to entertain the claim was error where it appeared that the testator
    "was not an authorized power company, regulated by the Depart-
    ment of Public Utilities." [587-588]

CONTRACT.   Writ in the Superior Court dated February
17, 1972.

A motion to dismiss was allowed by *Coddaire, J.*

*Edward J. Moloney* for the plaintiff.

*John F. Donohoe* for the defendants.

GRANT, J.   As originally drawn, the writ in this action of
contract brought in the Superior Court described the
plaintiff simply as "Scottie Industries" and commanded
the officer "to attach the goods and estate of John F.
Donohoe and John E. Leggat, Administrators c/t/a of the
Estate of Frank J. Garvey." Count 1 of the declaration
alleges that the plaintiff rented certain premises in Lowell
from the "Defendant" during the period from and in-
cluding July of 1959 through May of 1970; that during that

period the "Defendant" also sold the plaintiff electricity which the "Defendant" had purchased from a named electric utility company; that the "Defendant was not an authorized power company, regulated by the Department of Public Utilities, and the sale of electricity by the Defendant was illegal and improper"; that "[t]he charge levied by the Defendant on electricity sold to the Plaintiff was grossly excessive and far exceeded the cost of electricity furnished by the local public electric utility"; and that during the stated period there was an "excess charge" in a stated amount "which . . . the Defendant owes the Plaintiff." Count 2 alleges that the "Defendant is indebted to the Plaintiff for an overcharge in electricity" according to an account annexed. Both counts are said to "arise from the same cause of action."

The named administrators accepted service of the writ "[w]ithout waiving any defects . . . [therein] and reserving the right to challenge any such defects"; no attachment was made, either actual or chip. The "defendants," as they have styled themselves in their various pleadings, appeared generally and filed a motion to dismiss the action, an answer in abatement, a demurrer, and an answer to the merits.[1] The grounds of the motion to dismiss are: (1 and 2) that the writ is defective in failing to identify the plaintiff as a legal entity and to state an address where the plaintiff may be located or found[2]; (3) that "[t]he writ is on its face directed against the defendants personally and not against the goods and estate of their testator now in the hands and possession of the defendants in their fiduciary capacities"; and (4) that "[t]he [c]ourt has no jurisdiction over the

---

[1] Of all the various pleadings only the declaration, a motion to amend the declaration and the motion to dismiss are reproduced in the record transmitted to this court. See *Gately* v. *U-Haul Co.* 350 Mass. 483, 484 (1966).

[2] These two grounds ultimately evoked amendments of the writ and declaration to describe the plaintiff as "Scottie Industries, Inc. a Massachusetts corporation doing business in Andover, Essex County, Massachusetts." No other amendment of the writ or declaration has been offered. See, in this connection, *Henshaw* v. *Brown*, 299 Mass. 136, 137 (1937); *Maltzman* v. *Hertz*, 336 Mass. 704, 708-709 (1958); *S. C.* 340 Mass. 626 (1960).

subject matter of the plaintiff's action." As appears from the docket entries, the motion to dismiss, the answer in abatement and the demurrer were all marked for hearing before the court at the same time. The court entered an order allowing the motion to dismiss on the third ground stated therein, expressed no opinion on the merits of the fourth ground, and took no action on either the answer in abatement or the demurrer. The plaintiff has appealed. G. L. c. 231, § 96.

1. Whether a particular writ runs against a named personal representative in his capacity as an individual or against the estate of his decedent which has come into his hands and possession in his capacity as a fiduciary is a matter of intention to be determined by the language of the writ, the language of the declaration, and, if they are available, the evidence taken in the court below and any findings which that court may have made on such evidence. See *Yarrington* v. *Robinson,* 141 Mass. 450 (1886); *Manning* v. *Osgood,* 151 Mass. 148, 149-150 (1890); *Eaton* v. *Walker,* 244 Mass. 23, 28, 30 (1923); *Fessenden* v. *Gunsenhiser,* 278 Mass. 213, 217 (1932); *Breen* v. *Burns,* 280 Mass. 222, 225 (1932); *Coldwell* v. *New England Trust Co.* 282 Mass. 45, 46, 49 (1933); *Henshaw* v. *Brown,* 299 Mass. 136, 139 (1937).

In the present case only the writ and the declaration are available for our consideration. The writ, standing by itself, would appear to be addressed to the named defendants in their individual capacities. See *Manning* v. *Osgood,* 151 Mass. 148, 149-150 (1890); *Fessenden* v. *Gunsenhiser,* 278 Mass. 213, 217 (1932). However, the language of such a writ may be controlled by the language of the declaration. *Yarrington* v. *Robinson,* 141 Mass. 450 (1886). *Coldwell* v. *New England Trust Co.* 282 Mass. 45, 46 (1933). Thus, in the latter case the writ commanded the attachment of the goods and estate of "The New England Trust Company . . . as it is Administrator of the estate of Robert Alonzo Miner," while the declaration set out a cause of action against the estate and not against The New England Trust Company personally. It was held that the trial judge

was in error in ruling that the writ did not run against the goods or estate of the deceased and in allowing the trust company's motion to dismiss. See *Tupper* v. *Hancock,* 319 Mass. 105, 109 (1946), where it was said that the writ in the *Coldwell* case "was sufficient to bring Miner's estate, rather than the administrator in its individual capacity, into court."

Although the declaration in the present case does not refer to Frank J. Garvey by name and employs no words generally descriptive of a decedent, it refers repeatedly and conspicuously (albeit inartistically) to "the Defendant," a word which, when used in the singular, is not apt to describe both of the "John F. Donohoe *and* John E. Leggat" (emphasis supplied) named in the writ. It seems to us most unlikely that the plaintiff was dealing with the named defendants (or their predecessors as administrators or executors) during the entire period from 1959 until 1970 during which it occupied the premises in question and purchased electricity from "the Defendant"; for an estate to remain open and unadministered for that length of time (and until 1972 when the present action was brought) would be most unusual. In these circumstances we are of opinion that the declaration should be read as asserting a claim against Garvey's estate, that the writ should be read as running against the goods and estate of Garvey in the hands of the defendants in their capacities as the fiduciaries of that estate (G. L. c. 230, § 6), and that it was error to allow the defendants' motion to dismiss.

2. The defendants point to the fourth ground of their motion to dismiss (on which the judge took no action), refer us to the cases of *Boston* v. *Edison Elec. Illuminating Co. of Boston,* 242 Mass. 305, 306, 311-314 (1922), and *Metropolitan Dist. Commn.* v. *Department of Pub. Util.* 352 Mass. 18, 26-29 (1967), and urge us to hold that the action was rightly dismissed on the ground that the Superior Court lacked jurisdiction to determine or award damages for overcharges in the sale of electricity. We agree that such a question of jurisdiction is open here. *Kirby* v. *Kirby,* 338 Mass. 263, 266 (1959), and cases cited. However, the cases

cited by the defendants are concerned with a lack of jurisdiction in the Superior Court to entertain a claim for the recovery of so much of amounts which the plaintiff has paid an electric utility company as he asserts were in excess of rates filed with or prices subject to the supervision of the Department of Public Utilities (department) prior to any determination by the department that the facts are as alleged by the plaintiff. See also *Sullivan* v. *Boston Consol. Gas Co.* 327 Mass. 163, 166-167 (1951); *Fillmore* v. *Department of Pub. Util.* 357 Mass. 222, 223 (1970).

In the case at bar there is nothing in the declaration from which it can be inferred that the decedent was, or that the named defendants are, an "electric company" as defined in G. L. c. 164, § 1 or § 2, that any of them was or is required to make a return to the department (G. L. c. 164, § 83), or that the prices charged to and paid by the plaintiff were in any way subject to the supervision or approval of the department (G. L. c. 164, §§ 92-94B, each as from time to time amended). Quite to the contrary, it is expressly alleged, perhaps by way of anticipatory replication, that "[t]he Defendant was not an authorized power company, regulated by the Department of Public Utilities." Accordingly, there is nothing in the record now before us which would permit us to determine that the Superior Court is without jurisdiction to entertain this plaintiff's claim.[3]

*Order allowing defendants' motion to dismiss reversed.*

---

[3] If the defendants' contention has merit, they may wish to consider the advisability of moving for an evidentiary hearing on their answer in abatement. They may also wish to move for further hearing on their demurrer.